KITCHENS, Justice,
dissenting:
¶ 62. Because Counts I and II of Col: burn’s indictment were insufficient to apprise him of the crime for which he was accused, I respectfully disagree with the majority’s conclusion that the trial court correctly denied the motion to quash.
¶ 63. Uniform Rule of Circuit and County Court Practice 7.06 sets forth the requirements for the contents of a sufficient indictment:
The indictment upon which the defendant is to be tried shall be a plain, concise and definite written statement of the essential facts constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation....
URCCC 7.06. Such requirements are fundamental, rooted in both federal and state constitutions. See U.S. Const, amend. VI (“In all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation_”); Miss. Const. art. 3, § 26 (“In all criminal prosecutions the accused shall have a right ... to demand the nature and cause of the accusation‘[T]he purpose of the indictment is to provide the accused reasonable notice of the charges against him so that he may prepare an adequate defense.’ ” Warren v. State, 187 So.3d 616, 621 (Miss.2016) (quoting Brawner v. State, 947 So.2d 254, 265 (Miss. 2006)). We have held that the “‘indictment must contain (1) the essential elements of the crime charged, (2) sufficient facts to fairly inform the defendant of the charge which he must defend, and (3) . sufficient facts to enable him to plead double jeopardy in the event of a future prosecution for the same offense.’ ” Warren, 187 So.3d at 621 (quoting Young v. State, 119 So.3d 309, 313 (Miss.2013)).
¶ 64. Count I of the indictment alleged that:
Gregory Wayne Colburn between February 1, 2012 and August 31, 2012 in the County and State aforesaid and within the jurisdiction of this Court, did wilfully, unlawfully, feloniously, knowingly, and intentionally exploit Ruby Hill, a vulnerable adult as defined by Section 43-47-5(n) of the Mississippi Code of 1972, as amended, and with knowledge that Ruby Hill’s ability to perform normal activities of daily living or to provide for her own care or protection from abuse, neglect, or exploitation was impaired due to mental, emotional, physical or developmental disability or dysfunction, or brain damage or the infirmities of aging, did exploit Ruby Hill, by the illegal or improper use of Ruby Hill’s resources, in an amount over two hundred fifty dollars ($250.00) for his own profit or advantage, with or without the consent of Ruby Hill, including acts committed pursuant to power of attorney, by depositing checks made payable to Ruby Hill into his personal Community Bank account ... in violation of M.C.A. Section 43M7-19 of 1972, as amended....
(Emphasis added.) Count II likewise alleged that:
Gregory Wayne Colburn between May 1, 2012 and August 21, 2012 in the County and State aforesaid and within the jurisdiction of this Court, did wilfully, unlawfully, feloniously, knowingly, and intentionally exploit Ruby Hill, a vulnerable adult as defined by Section 43-47- *481 5(n) of the Mississippi Code of 1972, as amended, and with knowledge that Ruby Hill’s ability to perform normal activities of daily living or to provide for her own care or protection from abuse, neglect, or exploitation was impaired due to mental, emotional, physical or developmental disability or dysfunction, or brain damage or the infirmities of aging, did exploit Ruby Hill, by the illegal or improper use of Ruby Hill’s resources, in an amount over two hundred fifty dollars ($250.00) for his own profit or advantage, with or without the consent of Ruby Hill, including acts committed pursuant to power of attorney, by creating a Community. Bank account ... in the name of “Ruby Francis Hill or Gregory Wayne Colburn,” and then transferring funds belonging to Ruby Hill into the account, and using these funds for his own profit or advantage in violation of M.C.A. Section 43-47-19 of 1972, as amended....
(Emphasis added.) Colburn was acquitted on Count III of the indictment.
¶ 65. The majority concludes that Col-burn was, in fact, provided adequate notice of the charges against him because “Col-burn knew the statute he was charged with violating” and “[h]e knew the date ranges, the transactions, the banks, the account numbers, and the alleged victim of the crimes charged.” (Maj.Op. ¶ 24). But the indictment is laden with layer upon layer of disjunctive phraseology.
¶ 66. First, Colburn was informed that he exploited Hill “with knowledge that Ruby Hill’s ability to perform normal activities of daily living or to provide for her own care or protection from abuse, neglect, or exploitation was impaired due to mental, emotional, physical or developmental disability or dysfunction, or brain damage or the infirmities of aging.” (Emphasis added.) Mississippi Code Section 43-47-19(2)(b) does not even require that the defendant be in possession of knowledge of the alleged victim’s vulnerability; it requires merely that the defendant “willfully exploit! ] a vulnerable person ... where the value of the exploitation is Two Hundred Fifty Dollars ($250.00) or more.” Miss. Code. Ann. § 43-47-19(2)(b) (Rev. 2015). While-it is true that the indictment tracked the statutory language defining “vulnerable person,” the indictment does not allege that Hill was a “resident!] or patient! ], regardless of age, in a care facility.” Miss.Code Ann. § 43^7-5(q) (Rev. 2015). The State proved, though it did not allege in Colburn’s indictment, that Hill resided in a care facility. The jury was instructed that “ ‘vulnerable person’ ... includes all residents or patients, regardless of age, in a care facility.”. The indictment, therefore, did not allege “sufficient facts to fairly inform the defendant” of what it intended to prove with regard to Hill’s status as a vulnerable person within the meaning of Section 43-47-5(q).
¶ 67. Second, the indictment alleged that Colburn exploited Hill “by the illegal or improper use of Ruby Hill’s resources.” (Emphasis added.) “Illegal use” is defined as “any action defined under Mississippi law as a criminal act.” Miss.Code Ann. § 43-47-5(j) (Rev.2015). “Improper use” is defined as follows:
[A]ny use without the consent of the vulnerable person, any use with the consent of the vulnerable person if the consent is obtained by undue means, or any use that deprives the vulnerable person of his ability to obtain essential services or a lifestyle to which the vulnerable person has become accustomed and could have otherwise afforded.
Miss.Code Ann. § 43-47-5(k) (Rev.2015), Colburn would be wholly unable to ascertain from the face of the indictment of which course of criminal conduct he was *482 being accused, whether he was being accused of the illegal use or the improper use of Hill’s resources. It is difficult to conclude that the disjunctive language of the indictment provided “sufficient facts to fairly inform the defendant of the charge which he must defend.”
¶ 68. Finally, in the same vein, the indictment alleged that Colburn used Hill’s resources “with or without the consent of Ruby Hill_” It is true that such language tracks the statutory language from Section 43-47-5(k). But, again, the indictment does not explain which course of criminal conduct Colburn was alleged to have committed, whether- he used Hill’s resources without her consent, whether he used Hill’s resources with her consent, or both. Of course, if the State intended to prove improper use “with the consent of the vulnerable person,” it had to allege that the consent was “obtained by undue means.”[14] Miss.Code Ann. § 43ta7-5(k). Undue means, an element of the crime of exploitation of a vulnerable adult, was not pled in the indictment for either Count I or Count II.
¶ 69. The majority cites State v. Hawkins, 145 So.3d 636 (Miss.2014), to argue that the State was not required to allege which type of “improper use” was being charged, because “this Court has not required that level of specificity in indictments.” (Maj.Op. ¶ 25). But in Hawkins, the defendant was .accused of having committed a simple-assault on the victim by “ ‘willfully, negligently!,], and feloniously^ ” inflicting “ ‘pain and/or injury upon Deser-ie S. Edwards, a vulnerable person’ ” Hawkins, 145 So.3d at 638 (emphasis added). This Court examined the statutory language of Mississippi Code Section 97-3-7(1) (Supp.2013) and noted that “it is not clear if [the defendant] was charged under subsection (i) with ‘purposely, knowingly!,] or recklessly’ injuring [the victim] or under subsection (ii) with ‘negligently’ injuring [the victim], presumably by means other than a deadly weapon.’ ” Id. at 640.
¶ 70. The Court deemed the inclusion of the word “willfully” in the indictment to have been mere surplusage because “the indictment clearly charged [the defendant] with simple assault” and “[t]he recitation of the relevant facts showed that [the defendant’s] conduct was negligent.” Id. at 641. The Court further held' that “the State is not required to distinguish the subsections in every indictment so long as the indictment is sufficient to inform the defendant of the claims against him or her.” Id. at 642. Of course, this Court relied upon caselaw holding that an indictment putting a defendant on notice that the charge was aggravated assault was sufficient to apprise the defendant that “he was being charged with aggravated assault under both subsections, i.e., by causing injury under circumstances manifesting extreme indifference to the value of human life and by causing bodily injury with a deadly weapon or other means likely to produce death or serious bodily harm.” Id. at 643 (quoting Stevens v. State, 808 So.2d 908, 919-20 (Miss.2002)). This Court, held in Hawkins that the same rationale applied in the context of staple assault and that the subsections, one requiring intentional conduct and the other requiring negligence, were not mutually exclusive. Hawkins, 145 So.3d at 643, 645.
¶ 71. The present case .presents a situation, unlike that in Hawkins, in which the courses of criminal conduct are, in fact, *483 mutually exclusive. For Colburn’s use of Hill’s resources could have been either illegal or improper, not both. And each charged use of Hill’s resources must have been either with or without Hill’s consent, for if Hill’s consent had been obtained, the State bore the additional burden of alleging that consent had been obtained by undue means. Here, due to the disjunc-tivé wording of the indictment on multiple levels, I am unable to conclude that the alternative courses of criminal conduct constitute mere surplusage.
¶ 72. Accordingly, I would reverse and render, and I respectfully dissent. , .

. The State did not attempt to prove "improper use” by its fourth definition, “any use that deprives the vulnerable person of- his ability to obtain essential services or a lifestyle to which the vulnerable person has become accustomed and could otherwise have afforded,”